**Michael E. Farnell**, OSB #922996
E-mail: mfarnell@pfglaw.com
**Seth H. Row**, OSB #021845
E-mail: srow@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon 97205
Telephone: (503) 222-1812
Facsimile: (503) 274-7979

**Daniel A. Zariski** *(admitted pro hac vice)*
E-mail: dzariski@jwwolfelaw.com
**Michael R. Wrenn** *(admitted pro hac vice)*
E-mail: mwrenn@jwwolfelaw.com
Wolfe, Wrenn & Zariski
Two Union Square
601 Union Street, Suite 5110
Seattle, WA 98101
Telephone: (206) 467-9088
Facsimile: (206) 447-9374
        Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
Portland Division

ASH GROVE CEMENT COMPANY,

      Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts insurance
company; HARTFORD ACCIDENT AND
INDEMNITY COMPANY, a Connecticut
insurance company; and UNITED STATES
FIDELITY AND GUARANTY COMPANY, a
Connecticut insurance company,

      Defendants.

Case No. 3:09-CV-239-KI

**SECOND AMENDED COMPLAINT**

///

///

Page 1 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

Plaintiff Ash Grove Cement Company ("Plaintiff" or "Ash Grove") states and alleges as follows:

## NATURE OF ACTION

1.

This is an action for breach of contract, declaratory judgment and damages, seeking:

a.      A declaration of the rights, duties, and liabilities of the parties under liability insurance policies issued to Plaintiff by Defendants with respect to claims, demands, suits and proceedings against Plaintiff seeking damages for the cleanup of alleged groundwater, surface water and/or soil contamination at sites located in Multnomah County, Oregon in which Defendants have refused to defend or indemnify Plaintiff; and

b.      Damages for the breach of Defendants' contractual duties under such insurance policies, including their duty to pay defense costs with respect to the underlying claims;

c.      Attorney fees for prosecution of this suit pursuant to ORS 742.061.

Plaintiff brings this action for damages, a declaratory judgment and other relief pursuant to the Oregon Uniform Declaratory Judgments Act, ORS 28.010 et seq.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over each of the named Defendants because, upon information and belief, such Defendants:

a.      are licensed or authorized to do business in the State of Oregon; or

b.      have, within the relevant time periods, transacted the business of selling insurance in the State of Oregon;

c.      have sold insurance policies to Plaintiff which cover risks located within the State of Oregon; and/or

d.      have agreed, in the insurance policies that they sold to Plaintiff, to submit to the jurisdiction of any court of competent jurisdiction within the United States, to comply with all

Page 2 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

requirements necessary to give such court jurisdiction, and to have all matters arising under their insurance policies determined in accordance with the law and practice of such court.

3.

This Court has jurisdiction over the subject matter of this action pursuant to ORS Chapter 28 and ORS 14.030.

4.

Venue lies with this Court under ORS 14.080 because the events and property giving rise to this dispute are or were in Multnomah County, Oregon.

**PARTIES**

5.

Plaintiff Ash Grove Cement Company is a Delaware corporation headquartered in Overland Park, Kansas.

a.    Plaintiff operates cement plants in nine states across the country, including Oregon. The portland and masonry cement produced at these plants is used in the construction of highways, bridges, commercial and industrial complexes, single and multi-family homes, and a myriad of other structures. In addition to its cement manufacturing facilities, Plaintiff operates two deep water import terminals west of the Mississippi (including one in Portland, Oregon), a quarry operation in British Columbia, Canada, ready mix operations in the Midwest and packaging operations throughout the Midwest and West.

b.    Plaintiff is authorized to do and does business in the State of Oregon. Plaintiff owns two facilities in Portland -- the Rivergate Facility and the Terminal Facility -- that are the subject matter of the underlying claims for which insurance coverage is sought in this action. Each of those facilities is addressed in greater detail below. Portland is also the location of Plaintiff's Western Division marketing and operations departments.

///

///

Page 3 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

6.

Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is an insurance company incorporated and with its principal place of business in Massachusetts, that at all times relevant to this action was authorized to issue property and casualty insurance polices in the State of Oregon.

7.

Defendant United States Fidelity and Guaranty Company ("USF&G") is an insurance company incorporated and with its principal place of business in Connecticut, that at all times relevant to this action was authorized to issue property and casualty insurance polices in the State of Oregon.

8.

Defendant Hartford Accident and Indemnity Company ("Hartford") is an insurance company incorporated and with its principal place of business in Connecticut, that at all times relevant to this action was authorized to issue property and casualty insurance polices in the State of Oregon.

**THE SITES AT ISSUE IN THE UNDERLYING CLAIMS**

9.

Plaintiff in this action has been and continues to be the subject of claims, demands, suits and/or proceedings seeking damages for the cleanup of alleged groundwater, surface water and/or soil contamination at sites located in Multnomah County, Oregon. These underlying claims are asserted by private entities and/or governmental bodies all arising out of Plaintiff's ownership and/or activities at its Rivergate and Terminal Facilities in Portland, Oregon. These underlying claims involve allegations of property damage to the property of third parties, including the State of Oregon.

///

///

Page 4 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

10.

The Rivergate Facility is located in the Rivergate Industrial Park, 13939 Rivergate Road, Portland, Oregon 97203. Ash Grove's property is located on the east shore of the Willamette River, at River Mile 2.8. The property was acquired by Ash Grove (under its prior name -- Ash Grove Lime and Portland Cement Company) from the Port of Portland by warranty deed dated April 2, 1963 (recorded April 3, 1963). Ash Grove has owned the Rivergate premises since the April 1963 date of purchase. The first phase of a lime plant at the site was constructed and operational by 1964. At that time, the facility consisted of a barge mooring structure for receiving raw materials (e.g., limestone); material unloading, transporting and stockpiling systems; two calcimatic kilns; one hydrator; bulk storage silos; a warehouse; and an office. A third calcimatic kiln was put into production in 1977. A new hydrator was installed in 2001. The calcimatic kilns and hydrator produced quicklime and hydrated lime for Ash Grove until June 1, 2006 when Ash Grove discontinued lime production and leased a portion of its product handling facilities to an unaffiliated third party company. That company, Graymont Western US, Inc., continues to use those facilities (principally the storage silos, conveyors and hydrating facilities) to deliver lime products to its customers.

11.

Ash Grove also owns the Terminal Facility property at 3737 N. Port Center Way, Portland, Oregon 97217. This property, consisting of a North Terminal and a South Terminal -- which were acquired at different times -- is located on the east shore of the Willamette River, north of the Fremont Bridge between mile markers 10.1 and 10.5.

a.    The South Terminal was acquired by Ash Grove from the Union Pacific Railroad by special warranty deed dated December 22, 1992 (recorded December 29, 1992). Cement storage and distribution facilities were subsequently installed and the South Terminal was operational in December 1994. Since that date, the premises have been used to distribute cement to customers in the Pacific Northwest. Cement is delivered to the South Terminal via rail cars

Page 5 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

primarily from Ash Grove cement plants located more than 100 miles outside of the Portland area. The cement is unloaded and placed into six concrete storage silos. It is subsequently transferred into customer and independent carriers' tanker trucks. The expansion of the terminal with the addition of the North Terminal (described below) now allows for cement imported from overseas to also be distributed to customers' and carriers' tankers via the South Terminal's truck silos.

b.      Ash Grove acquired the North Terminal property through statutory special deed dated December 22, 2005 (recorded December 29, 2005) from NSC Smelter LLC, which Ash Grove understands is an affiliate of Columbia Gorge Aluminum Company ("CGAC"), through the bankruptcy process. Cement imported from overseas sources is unloaded into three steel storage silos at the site and then either loaded into railcars for distribution to Ash Grove's customers or transferred to the South Terminal for distribution as described above.

## THE UNDERLYING CLAIMS

12.

In December of 2000, the United States Environmental Protection Agency ("EPA") listed the Portland Harbor Superfund Site ("the Portland Harbor Site") located in the lower Willamette River near Portland, Oregon on the National Priorities List as a federal Superfund site. The study area for the site encompasses a stretch of the lower Willamette River, from approximately river mile 2 to river mile 11. In that same month, EPA also sent out nearly seventy General Notice Letters ("GNLs") informing potentially responsible parties ("PRPs") that they may be liable for money expended by EPA for response actions at the Portland Harbor Site under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. EPA sent additional GNLs in 2006. EPA is continuing its PRP search and stated that it intended to issue GNLs to additional parties in 2008.

///

///

Page 6 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

13.

In 2001, a remedial investigation and feasibility study ("RI/FS") began at the Portland Harbor Site and continues to the present. An extensive amount of information and data has been generated during the RI/FS concerning the nature, extent and sources of contamination at the Portland Harbor Site. EPA has stated that it anticipates completing the RI/FS in 2009, and that it anticipates issuing a Record of Decision ("ROD") specifying necessary cleanup action for the Portland Harbor Site in late 2010. It has also stated that it intends to send out Special Notice Letters providing the opportunity to negotiate a Consent Decree to pay any outstanding EPA oversight or removal action costs and to perform or pay for the remedial action selected for the Portland Harbor Site within 60 days of issuing the ROD. An initial group of parties (the "Convening Group") was brought together by EPA for the purpose of exploring the creation of a Participation Group. Ash Grove is a member of the Convening Group. EPA has advised the Convening Group that all PRPs associated with the Portland Harbor Site need to be ready to enter into consent decree settlement negotiations with EPA by early 2011. It has also stated that it will initiate enforcement action against non-settling parties.

14.

In January of 2008, pursuant to Section 104(e) of CERCLA, EPA sent Ash Grove a First Request for Information ("104(e) Request") regarding the Portland Harbor Site. EPA explained, on two occasions, that while voluntary cooperation with its investigation was sought, compliance with the 104(e) Request was required by law and that failure to respond to the 104(e) Request could result in enforcement action by EPA. A copy of EPA's 104(e) Request is attached as Exhibit A. Ash Grove submitted its response to the 104(e) Request in October of 2008. Ash Grove incurred substantial costs in compiling its response to the 104(e) Request, and in preparing its defense to potential liability to EPA and/or other PRPs at the Portland Harbor site.

///

///

Page 7 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

15.

Under Section 107(a) of CERCLA, PRPs and other entities with operations or property interests on or near the Willamette River may be held jointly and severally liable for all costs incurred by EPA and other PRPs in responding to releases or threats of releases of hazardous substances at the Portland Harbor Site. Such entities may also be responsible for costs associated with the restoration of natural resources damaged by hazardous substances. Additionally, under ORS 465.255, such entities may be strictly liable for remedial action costs incurred by the state or any other person that are attributable to or associated with the Portland Harbor Site and for natural resource damages.

16.

Ash Grove has been notified that based on information obtained from the RI/FS currently being performed for the Portland Harbor Site and other data collection and evaluation efforts undertaken to date, one or more participants in the Convening Group believes that Ash Grove is potentially responsible for response costs incurred and being incurred at the Portland Harbor Site under state and federal law.

17.

In November of 2006, Ash Grove was contacted by the Lower Willamette Group ("LWG") -- a group of companies engaged in the RI/FS for the Portland Harbor Site. The LWG alleged that its members had causes of action against Ash Grove for recovery of response costs incurred or to be incurred under CERCLA and other provisions of state, federal and common law. Ash Grove entered into a tolling agreement with LWG in late 2006. A copy of the tolling agreement and the cover letter that accompanied it is attached hereto as Exhibit B.

18.

In January of 2007, Ash Grove notified Defendants of its potential liability as a PRP at the Portland Harbor site. Despite repeated requests and demands, Defendants have refused

Page 8 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

and/or failed to provide a defense and have failed to reimburse defense costs related to the claims as outlined in paragraphs 12 through 17, above.

19.

To date, Ash Grove has incurred in excess of $750,000.00 in costs defending against the claims of the EPA and other governmental and non-governmental entities related to the Portland Harbor site.

## INSURANCE POLICIES COVERING PLAINTIFF

### Liberty Mutual Insurance Company

20.

Liberty Mutual Insurance Company issued the following policies to Ash Grove Lime Cement Co., predecessor in interest to Plaintiff Ash Grove Cement Company:

| Policy Number | Coverage Date |
| --- | --- |
| LG 11141051246029 | 1-1-69 to 1-1-70 |
| LG 11141051246028 | 1-1-68 to 1-1-69 |
| LG 11141051246027 | 1-1-67 to 1-1-68 |
| LG 11141051246026 | 1-1-66 to 1-1-67 |
| LG 11141051246025 | 1-1-65 to 1-1-66 |
| LG 11141051246024 | 1-1-64 to 1-1-65 |
| LG 11141051246023 | 1-1-63 to 1-1-64 |

21.

On information and belief, each of the Liberty Mutual policies issued from 1963 to 1966 provides for coverage as follows:

"Coverage B – PROPERTY DAMAGE LIABILITY

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including loss of use thereof caused by an accident."

22.

On information and belief, each of the Liberty Mutual policies issued from 1967 to 1970 provide for coverage as follows:

///

Page 9 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. **bodily injury** or
Coverage B. **property damage**

to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may take such investigations and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgment or settlement"

The Liberty Mutual policies referenced in this paragraph contain the following definition:

"'occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"

23.

Plaintiff or its predecessors were responsible for paying and did pay premiums on the policies issued by Liberty Mutual.

**United States Fidelity & Guaranty Company**

24.

USF&G issued the following policies to Ash Grove:

| Policy Number | Coverage Date |
|---------------|---------------|
| 1CC047821004 | 1-1-85 to 1-1-86 |
| 1CC025144845 | 1-1-84 to 1-1-85 |
| 1CC014913526 | 1-1-82 to 1-1-84 |
| 1CC017071054 | 1-1-82 to 1-1-83 |
| 1CCD86162 | 1-1-81 to 1-1-82 |
| 1CCC89034 | 1-1-80 to 1-1-81 |
| 1CC68421 | 1-1-79 to 1-1-80 |
| 1CC609127 | 1-1-77 to 1-1-78 |
| 1CC912016 | 1-1-76 to 1-1-77 |
| 1CC609127 | 1-1-73 to 1-1-76 |

Page 10 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

25.

On information and belief, the USF&G policies provide for coverage as follows:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

A.    Bodily Injury or

B.    Property Damage

to which the insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent...".

The USF&G policies included the following definitions:

"'occurrence' means an accident, including continuous or repeated exposure to conditions, which results, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

"'property damage' means:

(1)    physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at anytime resulting therefrom, or

(2)    loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

26.

Plaintiff or its predecessors were responsible for paying and did pay all premiums on the policies issued by USF&G.

**Hartford Accident & Indemnity Company**

27.

On information and belief, Hartford Accident & Indemnity Company issued the following policy to Ash Grove:

Page 11 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc

| Policy Number | Coverage Date |
|---------------|---------------|
| 37C815175 | 2-1-72 to 2-1-73 |

28.

On information and belief, the Hartford policy provides for coverage with terms similar to the USF&G policies. Plaintiff has requested a copy of the policy from Hartford, but has yet to be provided with the same.

29.

Plaintiff or its predecessors were responsible for paying and did pay all premiums on the policies issued by Hartford.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

30.

Plaintiff refers to paragraphs 5- 29 above and incorporate them herein by this reference.

31.

Defendants have a duty to defend and indemnify Plaintiff against one or more of the claims, demands, suits and/or proceedings against it seeking damages for the cleanup of alleged groundwater, surface water and/or soil contamination at sites located in Multnomah County, Oregon. Defendants have breached their contracts of insurance by denying coverage and/or refusing to defend and indemnify Plaintiff. As a result of Defendants' denials of coverage and refusal to defend and indemnify, Plaintiff has incurred substantial loss, including but not limited to, costs and attorneys' fees, in procuring its own legal defense.

32.

Plaintiff has performed all acts required of it under the policies it purchased from Defendants.

///

///

33.

Pursuant to ORS 742.061, Plaintiff is entitled to recover its attorneys' fees from Defendants.

34.

Plaintiff is entitled to recover all damages caused by these breaches of contract, including the costs and fees it has incurred in procuring its own legal defense.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Relief on Duty to Defend and Indemnify).**

35.

Plaintiff refers to paragraphs 5-29 above and incorporates them herein by this reference.

36.

Pursuant to ORS 28.010 et. seq., Plaintiff is entitled to a declaratory judgment concerning the rights and liabilities of Plaintiff under the insurance policies.

37.

Plaintiff is entitled to a judicial declaration that: (1) Defendants are obligated to defend Plaintiff in connection with the claims, demands, suits and/or proceedings against it seeking damages for the cleanup of alleged groundwater, surface water and/or soil contamination at sites located in Multnomah County, Oregon; and (2) Defendants have an obligation to indemnify Plaintiff in connection with the claims, demands, suits and/or proceedings against it seeking damages for the cleanup of alleged groundwater, surface water and/or soil contamination at sites located in Multnomah County, Oregon.

38.

An actual controversy now exists between Plaintiff and Defendants concerning their respective rights and duties. A judicial declaration is necessary and appropriate at this time in order that Plaintiff may ascertain the defense and indemnity obligations of Defendants.

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against each Defendant as follows:

1.       For declaratory relief, that each of the insurance policies at issue obligates each of the Defendants to provide a defense to Plaintiff and to indemnify Plaintiff in connection with the underlying claims, demands, suits and/or proceedings against it;

2.       For a money judgment in the amount of damages to be proven at trial, but no less than the defense costs incurred by Plaintiff in defending all claims, demands, suits and/or proceedings against it from the time notice was provided to each Defendant;

3.       For recovery of interest, costs and attorneys' fees as provided by ORS 742.061; and

4.       For such other and further relief as the Court deems equitable and just.

DATED this 3rd day of March, 2010.

By:       /s/    Seth H. Row
          **Michael E. Farnell**, OSB #922996
          E-mail: mfarnell@pfglaw.com
          **Seth H. Row**, OSB #021845
          E-mail: srow@pfglaw.com
          Parsons Farnell & Grein
          1030 SW Morrison
          Portland, Oregon 97205
          Telephone: (503) 222-1812
          Facsimile: (503) 274-7979

          **Daniel A. Zariski** *(admitted pro hac vice)*
          E-mail: dzariski@jwwolfelaw.com
          **Michael R. Wrenn** *(admitted pro hac vice)*
          E-mail: mwrenn@jwwolfelaw.com
          Wolfe, Wrenn & Zariski
          Two Union Square
          601 Union Street, Suite 5110
          Seattle, WA 98101
          Telephone: (206) 467-9088
          Facsimile: (206) 447-9374
          Of Attorneys for Plaintiff

Page 14 – SECOND AMENDED COMPLAINT
O:\9022001\0042 shr 2d amd compl.doc