IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASH GROVE CEMENT COMPANY,
a Delaware corporation,

                        Plaintiff,

      v.

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts company,
and UNITED STATES FIDELITY &
GUARANTY COMPANY, a Maryland
insurance company,

                        Defendants.

No. 3:09-cv-00239-HZ

OPINION & ORDER

Michael E. Farnell
Seth H. Row
Parsons Farnell & Grein, LLP
1030 SW Morrison
Portland, OR 97205

Michael R. Wrenn
Andrew N. Sachs
Wrenn Bender McKown & Ring, LLLP
Two Union Square
601 Union Street, Suite 5305
Seattle, WA 98101

        Attorneys for Plaintiff

Thomas M. Christ
Paul A.C. Berg
Cosgrave Vergeer Kester, LLP
500 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

Kevin G. McCurdy
McCurdy Fuller Ruettgers
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025

       Attorneys for Defendant Liberty
       Mutual Insurance Company

Andrew S. Moses
Thomas A. Gordon
Gordon & Polscer, LLC
9755 SW Barnes Road, Suite 650
Portland, OR 97225

       Attorneys for Defendant United States
       Fidelity & Guaranty Company

HERNANDEZ, District Judge:

       This case involves an insurance coverage dispute related to the Portland Harbor Superfund Site.  Plaintiff Ash Grove claimed damages of $2,271,838.58 for defense costs.  After a three-day bench trial, Plaintiff was awarded a sum of $1,887,907.82 in damages.  Plaintiff now moves for attorney fees [377] in the amount of $1,924,107.06 and costs [374] in the amount of $16,741.56.  For the reasons explained below, I grant the motion for attorney fees in part and deny the motion in part.  Plaintiff is awarded $1,029,511.76 in attorney fees.  I also award costs of $11,198.96.  Plaintiff additionally moved to amend the judgment [381] to reduce the damages awarded to $1,887,249.49 and to include an award for prejudgment interest of $550,037.41.  As explained below, I grant the motion to amend.  The judgment is reduced to $1,887,249.49 and I award $550,037.41 in prejudgment interest.

2 - OPINION & ORDER

DISCUSSION

I.      Motion for Attorney Fees

        A.      Entitlement to Fees

        State law governs attorney fees in diversity cases.  Riordan v. State Farm Mut. Auto. Ins. Co., 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law") (internal quotation marks omitted).  Generally, "a court awards attorney fees to a litigant only if a statute or contract authorizes such an award."  Swett v. Bradbury, 67 P.3d 391, 392 (Or. 2003).

        Plaintiff seeks attorney fees pursuant to Oregon Revised Statute (ORS) § 742.061, which provides, in relevant part:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the cost of the action and any appeal thereon.

ORS § 742.061(1).  The purpose of the statute is to encourage settlement of insurance claims without litigation.  Hennessy v. Mut. of Enumclaw Ins. Co., 211 P.3d 325, 327 (Or. Ct. App. 2009).

        The plain language of the statute sets forth four conditions for entitlement to attorney fees: (1) Plaintiff must have filed a proof of loss with its insurer; (2) settlement must not have occurred within six months of filing of that proof of loss; (3) Plaintiff must have brought a court action upon the policy; and (4) Plaintiff must have ultimately recovered more than the amount of any tender made by Defendant in the action.  If the conditions in the statute are met, "the decision whether to grant attorney fees is not a discretionary one.  Instead, when the statutory

conditions are met, the court 'shall' award attorney fees." Petersen v. Farmers Ins. Co. of Or., 986 P.2d 659, 661 (Or. Ct. App. 1999).

I find the conditions in ORS § 742.061 are met. Plaintiff tendered defense of the 104(e) request to Defendants on January 29, 2008. Findings of Fact and Conclusions of Law [367], 16. Defendants did not make an offer of settlement within six months of January 29, 2008. Row Decl. Supp. Att'y Fees [380] ¶ 6. Plaintiff subsequently filed suit on January 27, 2009. Notice of Removal [1] Ex. 1 at 1. As Defendants made no tender, it necessarily follows that the Plaintiff's recovery exceeds the amount of the tender made by Defendants. Row Decl. Supp. Att'y Fees ¶ 4. Accordingly, attorney fees must be awarded in this case pursuant to ORS § 742.061.

B.     Amount of Fees

Plaintiff seeks $1,924,107.06 in attorney fees. In their responses, Defendants object to the fee request for several reasons. In its reply, Plaintiff agreed to retract the following fees: 92 hours that Leslie Nellermoe spent to prepare as a witness; 39 hours spent on an amicus brief in Morgan v. Amex Assurance; 83.9 hours[1] spent to pursue settlement with Hartford, a dismissed Defendant; and 0.5 hours billed by Plaintiff's expert J.W. Ring. Pl.'s Reply 27-28. I will reduce Plaintiff's requested fees by these amounts.

1.     Standards

Subsection (1) of ORS § 20.075 lists the factors the Court must consider "in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." Here, the request for attorney fees is based on ORS § 742.061. As I have found the conditions of the

---

[1] The 83.9 hours are distributed among the following billers: Sachs, 6.2 hours, Wrenn, 74.3 hours, Zariski, 0.6 hours, and Row, 2.8 hours.

statute are met, the award pursuant to the statute is not discretionary. See Petersen, 986 P.2d at

661. Therefore, ORS § 20.075(1) does not apply to the analysis of whether to award attorney

fees. See id. It does, however, apply to my determination of the amount of an award of attorney

fees. See ORS § 20.075(2); see also McCormick & Schmick's Seafood Rest., Inc. v. Nat'l

Union Fire Ins. Co. of Pittsburgh, No. 08-1011-AA, 2011 U.S. Dist. LEXIS 113881, at *8-9 (D.

Or. Sept. 30, 2011).

> The factors identified in subsection (1) of ORS § 20.075 are:
>
> (a) The conduct of the parties in the transactions or occurrences that gave rise to
> the litigation, including any conduct of a party that was reckless, willful,
> malicious, in bad faith or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the
> parties.
> (c) The extent to which an award of an attorney fee in the case would deter others
> from asserting good faith claims or defenses in similar cases.
> (d) The extent to which an award of an attorney fee in the case would deter others
> from asserting meritless claims and defenses.
> (e) The objective reasonableness of the parties and the diligence of the parties and
> their attorneys during the proceedings.
> (f) The objective reasonableness of the parties and the diligence of the parties in
> pursuing settlement of the dispute.
> (g) The amount that the court has awarded as a prevailing party fee under ORS
> 20.190.
> (h) Such other factors as the court may consider appropriate under the
> circumstances of the case.

ORS § 20.075(1). Subsection (2) of ORS § 20.075 requires the Court to consider the following

additional factors:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the
> questions involved in the proceeding and the skill needed to properly perform the
> legal services.
> (b) The likelihood, if apparent to the client, that the acceptance of the particular
> employment by the attorney would preclude the attorney from taking other cases.
> (c) The fee customarily charged in the locality for similar legal services.
> (d) The amount involved in the controversy and the results obtained.
> (e) The time limitations imposed by the client or the circumstances of the case.
> (f) The nature and length of the attorney's professional relationship with the
> client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

Id. at § 20.075(2).  When analyzing the factors under ORS § 20.075, the Court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies."  McCarthy v. Or. Freeze Dry, Inc., 957 P.2d 1200, 1208 (Or. 1998).  But the Court "ordinarily has no obligation to make findings on statutory criteria that play no role in the Court's decision." Frakes v. Nay, 295 P.3d 94, 106 (Or. Ct. App. 2012).

        2.      ORS § 20.075 Subsection (1) Factors

Plaintiff generally concedes that the parties' claims and defenses were reasonable (factor (b)) and that the parties were diligent in this matter (factor (e)).[2]  The exceptions were that some of USF&G's affirmative defenses were not reasonable, that USF&G unreasonably withheld discovery about defense costs, and that neither Liberty Mutual nor USF&G offered to stipulate to damages or limit issues for trial.  Pl.'s Mem. Att'y Fees 5-6.  Defendants on the other hand, argue that Plaintiff was unreasonable in pursuing several unsuccessful motions to compel. Liberty Mutual Resp. 5; USF&G Resp. 5.

It appears that none of Plaintiff's motions to compel were ruled upon.  Judge King scheduled oral argument on two of Plaintiff's motions to compel [129, 136] for March 23, 2011. March 23, 2011 Order [171].  The minutes of the conference do not indicate any rulings for the motions to compel.  March 29, 2011 Minutes [174].  However, Plaintiff's counsel asserts that no rulings were made, as Judge King encouraged the parties to resolve the discovery disputes.  Row Decl. Supp. Att'y Fees ¶ 3.  Plaintiff filed a third motion to compel [221], which Judge King denied but gave leave to re-file.  May 5, 2012 Minutes [245].  Plaintiff renewed the motion to compel [258], and this court reserved ruling on the motion at the pretrial conference.  March 18,

_____

[2] Plaintiff argues that factors (a) and (g) are not applicable.  Pl.'s Mem. Att'y Fees 5 and 6 n5. Plaintiff did not mention factors (c) or (d).

2013 Minutes [342]. I am not convinced that Plaintiff's motions to compel warrant a reduction in attorney fees. Even though there were no rulings from the motions, there is no indication that the motions requested documents beyond the realm of what could be discoverable.

Liberty Mutual additionally argues that it should not be required to pay attorney fees that Plaintiff spent to pursue other insurers.[3] Liberty Mutual Resp. 6. Factor (c) considers whether an award of attorney fees would deter others from asserting good faith claims or defenses in similar cases. Liberty Mutual asserts that it cannot control how other insurers, namely Hartford and USF&G, respond to claims for coverage. Plaintiff has already withdrawn its request for fees related to Hartford. As for fees associated with USF&G, I have already found that the motions to compel directed at USF&G do not affect the reasonableness of Plaintiff's fee request.

In sum, I do not find that any of the factors in subsection (1) of ORS § 20.075 support an adjustment of Plaintiff's attorney fee request.

3.    ORS § 20.075 Subsection (2) Factors

Plaintiff concedes that not all the factors in subsection (2) of ORS § 20.075 are applicable to determine the reasonableness of Plaintiff's fee request.[4] I will consider only the following factors for which Plaintiff has presented evidence:

> (a) the time and labor required in the matter, the novelty and difficulty of the questions involved, and the skill needed to properly perform the legal services;
> (c) the fee customarily charged in the locality for similar legal services;
> (d) the amount involved in the controversy and the results obtained; and
> (g)[5] the experience, reputation and ability of the attorney.

/ / /

---

[3] Liberty Mutual raises this same argument later under the ORS § 20.075 subsection (2) analysis of factor (a), the time and labor required in the proceeding. Liberty Mutual Resp. 10-11.

[4] Plaintiff argues that factors (e) and (h) are not applicable. Pl.'s Mem. Att'y Fees 7-8. Plaintiff mentions factor (b), but does not provide any evidence in support. Id. at 7. Factor (f) is entirely omitted from the discussion. Id.

[5] Plaintiff mislabels this factor as "(f)." Id.

a.    Factor (a)—Time, Labor, Difficulty, Skill

Defendants argue that the time and labor spent by Plaintiff's attorneys is not reasonable.

Defendants rely on expert John Pierce[6] to evaluate the reasonableness of Plaintiff's attorney fee

request.  Liberty Mutual Resp. 2.  Defendants' objections fall into the following categories:  (1)

fees for work unrelated to this case; (2) multiple attorneys billing for the same task; (3) failure to

segregate fees among the Defendants; (4) fees spent on motions to compel and for protective

orders; (5) vague or unsupported billing entries; (6) billing for clerical tasks, and (7) billing for

expenses that are not attorney fees.

(i)    Unrelated Fees

Defendants object to fees for work not related to this case.  First, Defendants object to

time billed by Leslie Nellermoe.  Nellermoe represents Plaintiff in the underlying suit involving

the 104(e) request and the PCI Group.  As evidenced by the billing entries, Nellermoe also

assisted with the litigation of this case.  See Row Decl. Supp. Att'y Fees Ex. B.  Defendants

argue that Nellermoe was not an attorney of record and has never appeared on behalf of Plaintiff.

Liberty Mutual Resp. 9; USF&G Resp. 9.  I am unaware that such requirements must be met

before fees may be awarded; and Defendants have not offered any legal authority in support of

their argument.  Therefore, based on this objection, Nellermoe's fees will not be reduced.

Next, Defendants dispute all fees related to the Morgan v. Amex Assurance amicus brief

to the Oregon Supreme Court.  Plaintiffs spent 41.2 hours working on the amicus brief.[7]

McCurdy Decl. Ex. 8 ("Pierce Report") Exs. H-1, H-2.  Plaintiff has conceded to reduce all but

3.1 hours billed by Plaintiff's lead counsel, Michael Wrenn.  Plaintiff argues that Wrenn spent

---

[6] During the court trial, Mr. Pierce testified as an expert regarding the reasonableness of fees
incurred by Plaintiff for the duty to defend claim.

[7] The 41.2 hours are distributed among the following billers:  Nellermoe, 7.1 hours; Wrenn, 31.4
hours; and Row, 2.7 hours.

the 3.1 hours to analyze <u>Morgan</u> and determine its applicability to this case.  Row Decl. Supp. Att'y Fees Ex. B at 106-07.  In reviewing the disputed <u>Morgan</u> billing entries, I find that Wrenn spent 2.8 hours[8] on work directly related to this case.  <u>Id.</u>

Defendants also object to eight hours,[9] totaling $2005, spent to respond to an audit from Plaintiff's accounting firm.  Plaintiff argues that there is a "but for" relationship between this case and the audit work.  Even so, I disagree that the cost of the audit should be shifted to the Defendants.  Plaintiff fails to explain how the audit work was required to litigate this case.  Defendants' objection to the eight hours of audit work is justified.

(ii)    Multiple Attorneys

First, Defendants object to billing by multiple attorneys at inter-office and intra-firm conferences.  Generally, "[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys."  <u>Nat'l Warranty Ins. Co. v. Greenfield</u>, No. CV-97-01654-ST, 2001 U.S. Dist. LEXIS 7763, at *14 (D. Or. Feb. 8, 2001); <u>see also</u> <u>Marquez v. Harper Sch. Dist. No. 66</u>, No. 2:09-cv-01254-SU, 2012 U.S. Dist. LEXIS 88940, at *26 (D. Or. June 26, 2012) (good billing practice requires that only one attorney bill for time spent in conference with multiple attorneys; duplicative hours billed by attorney with lower hourly rate were excluded); <u>West Linn Corporate Park, LLC v. City of West Linn</u>, No. 3:01-cv-01787-HZ, 2011 U.S. Dist. LEXIS 115000, at *38-40 (D. Or. Oct. 4, 2011) (fees reduced because of duplicative efforts among counsel; such duplication is inconsistent with a higher hourly rate based on counsel's expertise).

---

[8] The 2.8 hours are comprised of the following time entries:  5/19/11, 2.3 hours (1.3, 0.6, 0.2, and 0.2); 5/23/11, 0.5 hours.  Row Decl. Supp. Att'y Fees Ex. B at 106-07.
[9] The eight hours are distributed among the following billers:  Farnell, 0.9 hours; Perkins, 6.5 hours; and Wrenn, 0.6 hours.  McCurdy Decl. Ex. 11.

Defendants identified 513.12 hours, or $168,501.71 in fees, that were billed as a result of conferences involving two or more attorneys.  Pierce Report at 9.  Defendants recommend allowing fees for only the attorney at the highest billing rate.  Id. at 10.  This recommendation would result in a reduction of 279.24 hours.[10]  Id.  Plaintiff argues that no deductions should be allowed because it has already reduced its fees appropriately.  Pl.'s Reply 10.  Additionally, Plaintiff argues that multiple attorneys were needed because lead counsel Wrenn was not experienced with Oregon coverage law; the case presented an issue of first impression; the case involved the disclosure of highly sensitive information; and Plaintiff attempted to allocate work to the lowest billing attorney.  Id. at 11.

I find that there was unnecessary duplication of effort among the attorneys hired by Plaintiff.  "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent."  Nat'l Warranty Ins. Co., 2001 U.S. Dist. LEXIS 7763, at *14.  Upon review of the billing records, I disagree that Plaintiff has eliminated all duplicative efforts from its billing entries.  Plaintiff's other reasons to justify multiple attorneys billing at conferences are unpersuasive.  The proffered reasons may explain Plaintiff's choice to hire multiple attorneys, but does not explain why multiple attorneys billed for the conferences.  For example, on March 2, 2009, two attorneys billed 0.2 and 0.3 hours each for a conference to discuss a corporate disclosure statement.[11]  Row Decl. Supp. Att'y Fees Ex. B at 6.  It is unfathomable that two attorneys needed to discuss the content of a routine filing in

---

[10] The 279.24 hours are distributed among the following billers:  Adams, 2.2 hours; Baxter, 1.5 hours; Conley, 16.26 hours; Hale, 0.5 hours; Perkins, 0.2 hours; Row, 101.18 hours; Zubel, 0.3 hours; Nellermoe, 28.2 hours; Sachs, 73.15 hours; Spence, 12.8 hours; and Zariski, 42.05 hours. Pierce Report Ex. F at 2.

[11] The filed corporate statement consists of two sentences:  "Pursuant to Fed. R. Civ. P. 7.1, Plaintiff Ash Grove Cement Company makes the following disclosure statement:  There are no parent corporations and no publicly held corporations owning 10% or more of its stock.  Plaintiff files this disclosure statement at the direction of chambers notwithstanding the pending Motion to Remand (#12)."  Pl.'s Corp. Disclosure Statement [30].

federal court.  To account for the duplication, I find that a reduction of 279.24 hours is warranted.

Second, Defendants object to multiple attorneys billing to attend hearings and depositions.  Defendants have identified 14.3 hours[12] in which multiple attorneys billed for such events.  Pierce Report at 17.  Plaintiff's arguments in support of these fees are the same as those mentioned in the prior discussion regarding multiple attorneys billing for conferences.  Based on similar reasoning, I find that a reduction of hours is appropriate.  In addition to the 14.3 hours to which Defendants objected, it is unreasonable to bill for the presence of three attorneys for each day of trial.  I allow the hours billed only for the presence of lead counsel Wrenn and Row, the attorneys with the highest billing rates for outside and local counsel.  Therefore, Plaintiff's request should be further reduced by 21 hours.[13]

Finally, Defendants object to 51.22 hours spent to prepare for and attend a trial-planning meeting in Portland involving five attorneys.  McCurdy Decl. Ex. 12.  Defendants argue that the December 8, 2011 meeting was not necessary because the trial was seven months away.  Defendants also argue that multiple attorneys should not have billed for this inter-office conference.  Even though the trial was seven months away, holding a trial-planning meeting is not unreasonable.  However, as I have previously found, requiring Defendants to pay for multiple attorneys to attend a meeting is not reasonable.  "[W]hen nine lawyers play some role in litigation, nobody is getting nine times the amount of work that would be done by one lawyer."  Molony v. Crook County, No. CV 05-1467-MO, 2009 U.S. Dist. LEXIS 95008, at *12 (D. Or.

---

[12] The 14.3 hours are distributed among the following billers:  Row, 1.6 hours; Sachs, 9.1 hours; Wrenn, 2.7 hours; and Zariski, 0.9 hours.  Pierce Report Ex. K at 1.
[13] The 21 hours consist of the following billing entries for Sachs:  3/26/13, 5.5 hours; 3/27/13, 7.5 hours; and 3/28/13, 8.0 hours.  Row Decl. Supp. Att'y Fees Ex. B at 187.

Oct. 13, 2009).  Therefore, a reduction of 13.82 hours[14] is necessary to account for multiple attorneys who billed for attending the meeting on December 8, 2011.

(iii)    Segregation of Fees

Defendant Liberty Mutual objects to fees that were incurred with respect to USF&G and Hartford and for fees spent on the unresolved duty to indemnify claim.

Plaintiff has already agreed to withdraw fees associated with Hartford.  Thus, the issue is whether Plaintiff was obligated to apportion its fee request between Liberty Mutual and USF&G. There is no dispute that both Liberty Mutual and USF&G are liable for Plaintiff's attorney fees. Plaintiff brought the same claims against both insurers—duty to defend and duty to indemnify.  I am unaware of any legal authority that requires a prevailing insured to apportion its request for attorney fees among defendant insurers when the claims are identical and the policies are virtually identical.  In fact, the opposite is likely true—that the Defendants are jointly and severally liable for the attorney fees.  In North Marion School District #15 v. Acstar Insurance, the defendants were entitled to statutory attorney fees under the same statute at issue in this case. 138 P.3d 876, 879 (Or. Ct. App. 2006).  Because the issues in the case were identical for all plaintiffs, the attorney fee award was allocated jointly and severally.  Id. at 885.

Liberty Mutual cites to ZRZ Realty Company v. Benefit Fire & Casualty Insurance, 266 P.3d 61 (Or. 2011), to argue that the fees should be apportioned.  Liberty Mutual Resp. 19.  In ZRZ Realty, the court held that the plaintiff was only entitled to fees for work related to the duty to defend, and not the unresolved duty to indemnify.  Id. at 62.  ZRZ Realty is inapplicable here. Because there is no need to apportion the attorney fees request, Liberty Mutual and USF&G are jointly and severally liable for the entire attorney fees award.

---

[14] The 13.82 hours are distributed among the following billers:  Farnell, 3.72 hours and Sachs, 10.1 hours.  There were additional billing attorneys, but their time has already been accounted for (see Pierce Report Ex. F); and an additional reduction is not needed.

Liberty Mutual additionally argues that Plaintiff failed to categorize the fees between the duty to defend and the unresolved duty to indemnify, for which fees are not allowed. The duty to indemnify claim was stayed in October 2010. Oct. 12, 2010 Order [119]. Liberty Mutual does not object to any specific billing entries prior to the stay. A review of the entries prior to October 2010 reveals scant references to the indemnity claim. Even so, early in the litigation, the duty to defend and the duty to indemnify claims were sufficiently related, such that the work performed cannot be separated between the two claims. Plaintiff's fee request need not be reduced for time spent on the indemnity claim prior to October 2010.

(iv)    Motions

Defendant Liberty Mutual objects to 228.78 hours spent to file motions for protective orders or to seal documents. McCurdy Decl. Ex. 10. Liberty Mutual also objects to 15.7 hours spent on motions to compel. Pierce Report Exs. N-1, N-2. Liberty Mutual argues that the motions for protective orders or to seal were spurred by Plaintiff's choice to participate in the PCI Group, and thus the time spent on these motions should not be shifted to Defendant. Liberty Mutual Resp. 14. Liberty Mutual also argues that the motions to compel sought irrelevant information. I am not persuaded by Defendant's arguments. These motions were part and parcel of litigation and were not filed unreasonably.

(v)    Vague Entries

Defendants object to 287.75 hours because the time spent was unreasonable and because Plaintiff did not adequately describe the tasks performed. See Pierce Report Ex. J. Of the disputed 287.75 hours, 278 hours were spent on document review. Id. Plaintiff counters that the time spent was reasonable in light of the number of documents reviewed, and that the document review was necessary to respond to Defendants' discovery requests.

The numbers of hours expended must not only be reasonable, but also adequately documented.  <u>Sterling Sav. Bank v. Sequoia Crossing, LLC</u>, No. 09-555-AC, 2010 U.S. Dist. LEXIS 82039, at *16 (D. Or. Aug. 11, 2010).  This District has specifically cautioned against block billing and providing vague or otherwise inadequate descriptions of tasks because these practices greatly hinder the court's ability to assess the reasonableness of the time expended.  <u>See</u> U.S. District Court, Message Regarding Attorney Fee Petitions, http://www.ord.uscourts.gov/index.php/court-policies-517/fee-petitions (last updated Feb. 6, 2013).  "The Court recommends that members of the bar…support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task."  <u>Id.</u>

I agree with Defendants that the billing entries are vague, such that the reasonableness of the time spent is difficult to ascertain.  The following examples illustrate the problem:  "work on email production," "work on discovery," "document review project," "review selected documents," and "work on privilege log."  Pierce Report Ex. J at 2, 3, 4, 7, 10.  I am unable to determine whether the amount of time billed is reasonable for the described task.  Plaintiff provides an ad hoc justification—reasoning that for the 7,872 documents reviewed, an average of 28 documents were reviewed per hour for the 278 hours billed.  Pl.'s Reply 5.  This reasoning is speculative at best, and I decline to justify the 278 hours based on this analysis.  Plaintiff further argues that because Defendants' discovery request triggered the need the document review, all the hours spent on the request should be allowed.  <u>Id.</u> at 4.  This argument is unpersuasive, as it fails to address the issue of vague billing entries.  Plaintiff has failed to satisfy its burden to show

that the hours billed are reasonable.  Therefore, after reviewing the billing entries for the

disputed 287.75 hours, a deduction of 279.15 hours is warranted.[15]

(vi)     Clerical Tasks

Defendants object to 64.45 hours[16] spent on clerical tasks that were billed at attorney and

paralegal rates.  Liberty Mutual Resp. 16; USF&G Resp. 10.  Plaintiff argues that some of the

identified tasks were not clerical and that if the task was clerical, the time may be billed as long

as the task was not billed at an attorney rate.  Pl.'s Reply 22-23.

I agree with Defendant that clerical tasks are not properly billed as attorney fees but are

overhead expenses absorbed by counsel.  E.g., Bakewell v. Astrue, 3:10-cv-01525-JE, 2013 U.S.

Dist. LEXIS 34245, at *8-9 (D. Or. Jan. 9, 2013) ("costs associated with clerical tasks are

typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not

properly reimbursable") (citing Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989) ("purely

clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate, regardless of who

performs them"); Frevach Land Co. v. Multnomah Cnty., No. 3:99-cv-01295-HU, 2001 U.S.

Dist. LEXIS 22255, at *36-37 (D. Or. Dec. 18, 2001) (inappropriate "to bill a client or to seek

fees under a fee-shifting statute, for purely secretarial tasks").

"Tasks considered clerical include, but are not limited to, filing motions with the court,

filling out and printing documents, preparing affidavits and drafting certificates of service,

organizing files, calendaring dates, rescheduling depositions, and sending documents."  Sterling

---

[15] Of the 287.75 hours, 8.6 hours overlapped with the prior deduction for multiple attorneys at
the same conference.  The 8.6 hours consist of the following entries:  12/21/11, Sachs, 0.5;
1/5/12, Nellermoe, 0.5; 1/9/12, Nellermoe, 0.8; 1/10/12, Nellermoe, 0.4; 1/10/12, Sachs, 0.4;
1/10/12, Spence, 0.3; 1/11/12, Sachs, 0.7; 1/12/12, Sachs, 0.6; 1/13/12, Sachs, 0.5; 1/20/12,
Spence, 0.4; 1/24/12, Sachs, 1.3; 1/31/12, Sachs, 0.5; 2/1/12, Spence, 1.4; and 2/2/12, Spence,
0.3.
[16] The 64.45 hours are distributed among the following billers:  Wrenn, 2.94 hours; Adams, 0.3
hours; Baxter, 15.11 hours; Clarke, 6.25 hours; Conley, 24.9 hours, Farnell, 3.05 hours, and
Row, 11.9 hours.  Pierce Report Exs. D-1, D-2.

Sav. Bank, 2010 U.S. Dist. LEXIS 82039, at *19-20; see also Frevach, 2001 U.S. Dist. LEXIS

22255, at *36-37 (tasks such as proofreading, indexing, or assembling documents are not

compensable because they are overhead and thus already "reflected in the hourly billing rate.").

     In reviewing the billing entries raised in Defendants' objections, I agree that many of the

tasks are clerical.  Such tasks include Bates stamping documents, printing documents, putting

data on disks, saving documents, and sending emails that lack legal substance.  See Pierce Report

Exs. D-1, D-2.  There were also many entries in which attorneys billed for giving instructions.  If

the instruction involved legal work, then the time is properly billed.[17]  For example, the

delegation of work from one attorney to another or an attorney to a law clerk is appropriately

billed.  However, if the attorney instructs staff on how to perform clerical duties, such as

organizing documents for production, then that time is inappropriately billed as attorney fees.

Upon review of the entries to which Defendants' object, I found additional tasks that were

clerical.[18]  Therefore, Plaintiff's request should be reduced by 70.93 hours for clerical work.

(vii)    Other Expenses

     In addition to attorney fees, Plaintiff seeks $39,662.31 in related expenses.  These

expenses consist of computerized legal research, postage, conference calls, transportation, meals,

lodging, court reporting, document processing, and trial technology.  Row Decl. Supp. Att'y

---

[17] The following entries, totaling 1.33 hours, are appropriately billed:  (Farnell) 3/26/09, 0.1; 3/27/09, 0.05; 5/26/09, 0.05; 5/27/09, 0.77; 5/19/11, 0.16; and (Row) 11/1/12, 0.2.  Pierce Report Ex. D-2.

[18] In addition to Defendants' objections, the following entries, totaling 7.81 hours, are not appropriately billed:  10/5/09, 0.5 (create disk); 1/4/10, 0.2 (send email); 5/17/10, 0.13 (email); 5/19/10, 0.2 (email); 5/20/10, 0.23 (send email); 5/26/10, 0.1 (send email); 6/4/10, 0.25 (Bates label); 6/7/10, 0.1 (send email); 6/14/10, 0.7 (compiling and organizing); 6/28/10, 0.4 (emails); 4/12/11, 0.1 (review spreadsheet); 5/5/11, 0.2 (email); 5/6/11, 0.3 (draft and send letter); 7/11/11, 0.3 (call and email court); 11/22/11, 0.9 (draft and send letters); 12/20/11, 1.0 (create CDs, draft letters); 2/1/12, 0.1 (email); 3/5/12, 0.5 (draft letter and send documents); 12/27/12, 1.5 (collect, mark, email documents, review email regarding trial date, email witnesses and counsel regarding trial dates); and 1/22/13, 0.1 (review order on pretrial deadline).  The 7.81 hours are distributed among the following billers:  Baxter, 2.61 hours; Row, 2 hours, and Conley, 3.2 hours.

16 - OPINION & ORDER

Fees Exs. C, D, E.  Defendants object to all these expenses because the expenses are not recoverable under ORS § 742.061 and the expenses are not substantiated.

Expenses billed separately, and thus not a part of an attorney's hourly rate, may be allowed as part of the fee-shifting award under ORS § 742.061.  Strawn v. Farmers Ins. Co., 297 P.3d 439, 456 (Or. 2013) (internal photocopying and computerized legal research allowed as expenses) (citing Willamette Prod. Credit v. Borg-Warner Acceptance, 706 P.2d 577 (Or. Ct. App. 1985).  "Modern electronic accounting methods allow a more specialized billing for attorney fees.  Courts should recognize the reality of modern legal business practices and include expenses specially billed to the client in the attorney fees award when they are properly documented and are reasonable."  Willamette Prod. Credit, 706 P.2d at 580.

Plaintiff is entitled to claim expenses that were billed separately to the client.  However, I decline to award all of the claimed expenses because not all of the expenses were substantiated or reasonable.  I allow only the expense of $7,944.72 for computerized legal research via Westlaw and PACER because these expenses are typically incurred in litigation.  Row Decl. Supp. Att'y Fees Ex. C at 5.

As for the other expenses, I find that they were not reasonable or substantiated sufficiently.  Plaintiff submitted charts to summarize the expenses, but from the brief descriptions, it is unclear whether the charges were reasonable.[19]  See id. at Exs. D, E.  This is particularly true regarding the transportation, hotel, and meal expenses.  For example, Plaintiff spent $2259 on meals for its trial team at high-end restaurants (Heathman Hotel, Clyde Common,

---

[19] For instance, Plaintiff claimed expenses simply labeled as "postage" or "FEDEX."  See Row Decl. Supp. Att'y Fees Ex. D.  With the availability of email and scanning technology, it is unclear whether these expenses were reasonable.  Plaintiff also spent $10,552.19 on "trial technology."  Id. at 6.  There is no breakdown of this significant expense.  Even though Plaintiff explains that the technology allowed exhibits to be displayed electronically, I cannot say whether the entire sum was reasonable.

17 - OPINION & ORDER

Southpark).  Row Decl. Supp. Att'y Fees Exs. D at 5, E at 2.  Although it is unclear who was considered part of the "trial team" due to the lack of documentation, it is worth noting that only three attorneys appeared on behalf of Plaintiff at trial.  As I have stated before, Plaintiff was within its right to hire multiple attorneys.  But that does not mean that the expenses resulting from multiple attorneys should be shifted to the Defendants.

          b.        Factors (c) and (g)—Fee in Locality

I combine the discussion of factors (c) and (g) because the fee customarily charged—factor (c), depends on the experience and ability of the attorney—factor (g).  The chart below summarizes the hourly rates that Plaintiff seeks for its attorneys, law clerks, paralegals, and project assistants.

| FIRM | NAME | POSITION | YEARS OF PRACTICE | HOURLY RATE |
|---|---|---|---|---|
| Parsons | John Parsons | Partner | 15 | $350 |
| | Michael Farnell | Partner | 21 | $325 |
| | Seth Row | Of Counsel/Partner | 12 | $250-290 |
| | Ian Hale | Associate | 7 | $265 |
| | Megan Perkins | Associate | 8 | $225-235 |
| | Emily Miller | Partner | 10 | $225 |
| | Spencer Adams | Associate | 12 | $225 |
| | Conrad Zubel | Associate | 10 | $200-225 |
| | Kristopher Kolta | Associate | 3 | $175-190 |
| | Kalen Fredette | Associate | 5 | $175 |
| | Lisa Farrell | Law Clerk | 0 | $100 |
| | Lucy Fleck | Law Clerk | 0 | $100 |
| | Stephen Scott | Law Clerk | 0 | $100 |
| | Kathryn Bell | Paralegal | 20 | $150 |
| | Kim Conley | Paralegal | 15 | $125-135 |
| | Aimee Baxter | Paralegal | 5 | $100 |
| | Diane Goodwin | Paralegal | 10 | $100 |
| | Anne Clarke | Project Assistant | 1 | $75 |
| Wrenn | Michael Wrenn | Partner | 33 | $400 |
| | Daniel Zariski | Partner | 23 | $300 |
| | Andrew Sachs | Associate | 7 | $250 |

Row Decl. Supp. Att'y Fees Exs. G-K; Second Row Decl. Supp. Att'y Fees [431] ¶¶ 2-15.

(i)    Attorneys

As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic Survey.  See Bell v. Clackamas Cnty., 341 F.3d 858, 868 (9th Cir. 2003) (court must look to prevailing market rates in the relevant community); Roberts v. Interstate Distrib. Co., 242 F. Supp. 2d 850, 857 (D. Or. 2002) (in determining the reasonable hourly rate, District of Oregon uses OSB Economic Survey as initial benchmark).  The most recent OSB Economic Survey was published in 2012.[20]

Plaintiff requests a $350 rate for Parsons, a business litigator with 15 years[21] of experience.  According to the 2012 OSB Economic Survey, the average hourly rate for Portland attorneys with 13 to 15 years of practice is $312.  I find that the average hourly rate of $312 is a reasonable rate for Parson.

Plaintiff requests a $325 rate for Farnell, an insurance coverage attorney with 21 years of experience.  The average hourly rate for Portland attorneys with 16 to 20 years of practice (which Farnell would have had in 2008) is $256 and the median hourly rate is $250.  The average hourly rate for Portland attorneys with 21 to 30 years of practice is $326 and the median hourly rate is $333.  I find that the requested $325 rate is a reasonable hourly rate for Farnell.

Plaintiff requests rates varying between $250 and $290 for Row, an insurance coverage attorney with 12 years of experience.  The average hourly rate for Portland attorneys with seven to nine years of practice (which Row would have had in 2008) is $258 and the median hourly rate is $250.  The average hourly rate for Portland attorneys with ten to twelve years of practice is $280 and the median hourly rate is $275.  I find that $275 is a reasonable hourly rate for Row.

---

[20] The 2012 OSB Economic Survey is available at
http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf.
[21] I recognize that the years of practice are calculated from 2013.  Because the fees were incurred over a five-year span, from 2008 to 2013, I will factor this difference when appropriate.

Plaintiff requests a $265 rate for Hale, an associate with seven years of experience. Hale began working on this case in 2013. Second Row Decl. Supp. Att'y Fees ¶ 15. I find that the average hourly rate for an attorney with seven to nine years of experience, $258, is a reasonable rate for Hale.

Plaintiff requests rates varying between $225 and $235 for Perkins, a business transaction attorney who assisted with the audit request. Because I have already ruled that fees spent on the audit are not allowed, none of Perkins's time may be shifted to Defendants. Thus, I need not determine a reasonable hourly rate for Perkins.

Plaintiff requests a $225 rate for Adams, an associate who worked on this case until 2009. Adams was an associate with eight years of experience in 2009. Second Row Decl. Supp. Att'y Fees ¶ 14. Considering that the average hourly rate for an attorney with seven years to nine years of experience is $258, I find that the requested rate of $225 is a reasonable rate for Adams.

Plaintiff requests a $225 rate for Miller, a partner who had one billing entry in 2010. Miller had seven years of experience in 2010. Second Row Decl. Supp. Att'y Fees ¶ 5. Considering that the average hourly rate for an attorney with seven years of experience is $258, I find that the requested rate of $225 is a reasonable rate for Miller.

Plaintiff requests rates varying between $200 and $225 for Zubel, an associate who billed twice in this case—once in 2009 and once in 2012. Zubel had between six and nine years of experience while working on this case. Considering that the average hourly rate for an attorney in Portland with four to six years of experience is $210, and $258 for an attorney with seven to nine years of experience, I find that $220 is a reasonable hourly rate for Zubel.

Plaintiff requests rates varying between $175 and $190 for Kolta, an associate who was admitted to practice in 2010.  The average hourly rate for Portland attorneys with zero to three years of practice is $182.  I find that the rate of $175 is a reasonable rate for Kolta.

Plaintiff requests an hourly rate of $175 for Fredette, an associate who was admitted to practice in 2008.  Fredette worked briefly on this case in 2010.  Considering the average hourly rate for Portland attorneys with zero to three years of practice is $182, I find that the requested rate of $175 is a reasonable rate for Fredette.

Plaintiff requests a $400 rate for Wrenn, an insurance coverage attorney with 33 years of experience.  The average hourly rate for Portland attorneys with 21 to 30 years of practice (which Wrenn would have had in 2008) is $326 and the median hourly rate is $333.  The average hourly rate for Portland attorneys with over 30 years of practice is $340 and the median hourly rate is $350.  I decline to award Wrenn a $400 billing rate.  Although the case presented an issue of first impression, the case was not complex.  I also view Plaintiff's handling of the case as average.  I find that $340 is a reasonable hourly rate for Wrenn.

Plaintiff requests a $300 rate for Zariski, a general litigation attorney with 23 years of experience at the time he worked on this case in 2008 to 2011.  Row Decl. Supp. Att'y Fees Ex. I at 2.  Considering that the average hourly rate for Portland attorneys with 21 to 30 years of practice is $326, I find that the requested $300 hourly rate is reasonable for Zariski.

Plaintiff requests a $250 rate for Sachs, a litigation associate with seven years of experience.  Sachs began working on this case in 2011.  The average hourly rate for Portland attorneys with four to six years of practice (which Sachs would have had in 2011) is $210.  The average hourly rate for Portland attorneys with seven to nine years of practice is $258.  I decline

to award Plaintiff's requested rate.  As I have already stated, Plaintiff's handling of the case was average.  I find that $220 is a reasonable hourly rate for Sachs.

Plaintiff additionally requests fees on behalf of three Wrenn Bender timekeepers for which no documentation is provided:  MEF, LCN, and DRS.  Row Decl. Supp. Att'y Fees Ex. M.  Defendants have made an educated assumption that "LCN" is Leslie Nellermoe.  Given the consensus among the parties in their briefing, I will recognize "LCN" as Nellermoe.  Plaintiff requests a billing rate of $395 for Nellermoe.  Nellermoe is the lead attorney for Plaintiff in the underlying suit involving the Portland Harbor Superfund Site.  Nellermoe Decl. [430] ¶ 1.  She has over 30 years of experience in environmental cleanup litigation.  Id. at ¶ 2.  Defendants object to the $395 rate, arguing that Nellermoe does not have any experience in insurance coverage matters.  Defendant recommends reducing Nellermoe's rate to $270, the rate charged by local counsel Row or alternatively $340, the average hourly rate for attorneys with over 30 years of experience.  Plaintiff submitted a declaration from Stephen English, but in a cursory statement, he merely opines that Nellermoe's billing rate is appropriate.  Supp. English Decl. Supp. Att'y Fees ¶ 5.  I agree with Defendants that the $395 rate is not reasonable because this case concerns insurance coverage and did not require her expertise in environmental cleanup litigation.  I find that $275, the rate allowed for local counsel Row, is reasonable.

As for "MEF" and "DRS," MEF billed 0.23 hours at $325 per hour and DRS billed 151.2 hours at $250 per hour.  There is no evidence in the record to determine a reasonable hourly rate for these two individuals.  Without an hourly rate, I am unable to award any fees for the work performed by MEF and DRS.

/ / /

/ / /

(ii)    Law Clerks, Paralegals, and Project Assistants

Plaintiff seeks a $100 hourly rate for all work performed by its law clerks.  There is

nothing in the record specifically addressing the reasonableness of the requested hourly rate for

law clerks.  In the last few years, other Judges in this District have awarded hourly rates of $125,

$120, $100, and $80 for work performed by law clerks.  Marquez v. Harper Sch. Dist. No. 66,

No. 2:09-cv-01254-SU, 2012 U.S. Dist. LEXIS 88940 (D. Or. June 26, 2012) (awarding $125

per hour for law clerk who was a law student); Potter v. Cavaletto, No. 3:10-cv-00124-ST, 2011

U.S. Dist. LEXIS 125118 (D. Or. Oct. 28, 2011) (awarding requested rates of $120 per hour and

$80 per hour for law clerks who had been members of the Oregon State Bar for one to three

years at the time they performed the work); Ogawa v. Malheur Home Tel. Co., No. 3:08-cv-

00694-MO, 2011 U.S. Dist. LEXIS 35899 (D. Or. Apr. 1, 2011) ($100 per hour for law clerk

who was still in law school).  I find that Plaintiff's requested rate of $100 for law clerks is

reasonable.

Plaintiff seeks varying rates for its paralegals:  Baxter and Goodwin, $100; Conley, $125-

135; and Bell, $150.  Although the OSB Economic Survey contains no information regarding

paralegal billing rates, Judges in this District have noted that a reasonable hourly rate for a

paralegal should not exceed that of a first year associate.  Knowledge Learning Corp. v. Nat'l

Union Fire Ins. Co. of Pittsburgh, No. 3:10-cv-00188-ST, 2011 U.S. Dist. LEXIS 57174, at *16-

17 (D. Or. Apr. 19, 2011) (reducing requested paralegal hourly rate from $215 and awarding

hourly rate of $165 based on paralegal's extensive experience); see also HMM Enters, LLC v.

Geppert, No. 3:12-cv-01874-MO, 2013 U.S. Dist. LEXIS 95350, at *4-5 (D. Or. July 9, 2013)

(finding requested hourly rates of $100 and $90 reasonable as they were below average for first-

year associate and "in line with other paralegal fee awards"); Prison Legal News v. Umatilla

<u>Cnty.</u>, No. 2:12-cv-01101-SU, 2013 U.S. Dist. LEXIS 71104, at *17 (D. Or. Feb. 27, 2013) (awarding paralegal hourly rates of $125, $105, and $90 and noting they did not exceed average rate for first-year associate).

The 2012 OSB Economic Survey shows that the average hourly rate for Portland attorneys with zero to three years of experience is $182. This attorney hourly rate is used as a ceiling and is not by itself determinative of a reasonable hourly rate. Plaintiff provides only the number of years of experience of the paralegals: Baxter, 5 years; Goodwin, 10 years; Conley, 15 years; and Bell, 20 years. I am unaware of whether these individuals have certifications or degrees that qualify them to be paralegals. In the absence of such evidence, I find that $100 is a reasonable rate for all the paralegal work performed.

Plaintiff also seeks a $75 hourly rate for Clarke, a project assistant. Plaintiff indicates that Clarke assisted local counsel Row and paralegal Goodwin with "discovery-related file-management tasks." Second Row Decl. ¶ 2. Clarke graduated from college in 2012. <u>Id.</u> Because Clarke has little work experience and no specialized education, I find that $25 is a reasonable hourly rate for a project assistant.

        c.      Factor (d)—Amount in Controversy and Results

Plaintiff sought $2,271,838.58 in defense costs and was awarded $1,887,907.82. While Plaintiff was successful in its claim on the duty to defend, I question whether the efforts by multiple attorneys justify the result. Although I have already reduced the fee request for multiple attorneys billing for the same meeting, I have yet to consider the time that multiple attorneys spent reviewing and revising each other's work. In certain instances, it is necessary for a supervising attorney to review the work performed by the junior attorney. For the most part, those instances are of no concern. I am, however, concerned by needless peer review,

particularly between experienced outside and local counsel.  The billing entries are replete with such examples.[22]  I find that an additional 30% reduction for fees billed by attorneys is warranted.

C.    Summary of Attorney Fee Findings

I award Plaintiff $1,029,511.76 in attorney fees.  The following chart summarizes my findings regarding attorney fees.

| NAME | RATE | HOURS REQUESTED[23] | HOURS GRANTED | FEES |
|------|------|--------------------|---------------|------|
| Parsons | $312 | 0.5 | 0.5 | $156 |
| Farnell | $325 | 75.99 | 69.45 | $22,571.25 |
| Row | $275 | 1587 | 1465.02 | $402,880.50 |
| Hale | $258 | 37.35 | 36.85 | $9,507.30 |
| Perkins | n/a | 9.95 | 0 | $0 |
| Adams | $225 | 35.55 | 33.05 | $7,436.25 |
| Miller | $225 | 0.5 | 0.5 | $112.50 |
| Zubel | $220 | 0.5 | 0.2 | $44 |
| Kolta | $175 | 33.2 | 33.2 | $5,810 |
| Fredette | $175 | 3.4 | 3.4 | $595 |
| Farrell | $100 | 49.6 | 49.6 | $4,960 |
| Fleck | $100 | 7.2 | 7.2 | $720 |
| Scott | $100 | 7.65 | 7.65 | $765 |
| Baxter | $100 | 48.6 | 29.38 | $2,938 |
| Bell | $100 | 3 | 3 | $300 |
| Conley | $100 | 91.8 | 47.44 | $4,744 |
| Goodwin | $100 | 0.4 | 0.4 | $40 |
| Clarke | $25 | 39 | 32.75 | $818.75 |
| Wrenn | $340 | 2018.5 | 1906.56 | $648,230.40 |
| Zariski | $300 | 314 | 270.45 | $81,135 |
| Sachs | $220 | 1317 | 1022.45 | $224,939 |
| Nellermoe | $275 | 260.1 | 124.1 | $34,127.50 |
| MEF | n/a | 0.23 | 0 | $0 |
| DRS | n/a | 151.2 | 0 | $0 |
| | | | SUBTOTAL | $1,452,830.45 |

---

[22] The following example is illustrative of my point.  On a motion to remand—a typical procedural motion, no less than five attorneys worked on the motion.  Row Decl. Supp. Att'y Fees Exs. A at 4-5; B at 7.  Reviewing drafts of the motion to remand occurred between local counsel, between outside counsel, and then between local and outside counsel.  This over-lawyering unnecessarily increased the cost of litigation.

[23] The total hours billed is categorized by individual in Exhibits L and M of the Row Declaration.

| | |
|---|---|
| Additional 30% Reduction | -$431,263.41 |
| Expenses | +$7,944.72 |
| **TOTAL** | **$1,029,511.76** |

II.    Bill of Costs

Plaintiff seeks $16,741.56 in costs, which are categorized as follows:  $189 for fees of the

Clerk, $502.25 for service of summons and subpoena fees, $14,022.78 for printed transcripts,

$303 for witness fees, $1,226.88 for printing, and $497.65 for copies.

A.    Standard

Federal Rule of Civil Procedure 54(d) provides that, "[u]nless a federal statute, these

rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed

to the prevailing party."  Fed. R. Civ. P. 54(d).  "Costs" taxable under Rule 54(d) "are limited to

those set forth in 28 U.S.C. §§ 1920 and 1821."  Twentieth Century Fox Film Corp. v. Entm't

Distrib., 429 F.3d 869, 885 (9th Cir. 2005), citing Crawford Fitting Co. v. J. T. Gibbons, Inc.,

482 U.S. 437, 445 (1987).  Under 28 U.S.C. § 1920, the court may tax as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  "Taxable costs are limited to relatively minor, incidental expenses…."

Taniguchi v. Kan. Pac. Saipan, Ltd., 633 F.3d 1218, 1221 (9th Cir. 2011) (citation omitted).  "It

comes as little surprise, therefore, that costs almost always amount to less than the successful

litigant's total expenses in connection with a lawsuit."  Id.

Rule 54 creates a presumption in favor of awarding costs to the prevailing party.  E.g., Assoc. of Mex.-Am. Educators v. State of Cal., 231 F.3d 572, 592-93 (9th Cir. 2000).  "[I]f a district court wishes to depart from that presumption, it must explain why so that the appellate court will be able to determine whether or not the trial court abused its discretion…[and] explain why a case is not ordinary."  Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003) (citation omitted).  The court may consider "the losing party's limited financial resources,…misconduct on the part of the prevailing party,…the importance of the issues,…the importance and complexity of the issues,…the merit of the plaintiff's case,…and the chilling effect on future civil rights litigants of imposing high costs."  Id.

The district court, however, "needs no affirmatively expressed reason to tax costs. Rather, it need only conclude that the reasons advanced by the party bearing the burden—the losing party—are not sufficiently persuasive to overcome the presumption."  Id. at 946.  Courts are free to construe the meaning and scope of the items enumerated as taxable costs in 28 U.S.C. § 1920.  Taniguchi, 633 F.3d at 1221; Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 177 (9th Cir. 1990).  The district court retains broad discretion to decide how much to award, if anything.  Padgett v. Loventhal, 706 F.3d 1205, 1209 (9th Cir. 2013).  Ultimately, it is "incumbent upon the losing party to demonstrate why the costs should not be awarded."  Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1079 (9th Cir. 1999) (citation omitted).

B.     Analysis

As an initial matter, I find that Plaintiff is entitled to recover the $189 filing fee, $74.25 in service fees for Defendants Liberty Mutual and USF&G, and $303 in witness fees for John Pierce and William Goodhue. These expenses are enumerated in 28 U.S.C. § 1920 and Defendants do not contest that these expenses are taxable.

1.      Service Fees

Plaintiff requests fees to serve dismissed Defendant Hartford and Defendants' expert witnesses John Pierce and William Goodhue.  First, Defendants object to the $158 service fee for Hartford, who settled with Plaintiff and was dismissed from the case in August 2010.  Plaintiff argues that it is immaterial that Hartford is no longer a party.  I disagree.  Plaintiff is entitled to costs because it prevailed at trial over Defendants Liberty Mutual and USF&G, not Hartford.  I see no reason to award costs associated with Hartford against the Defendants.

Defendants also object to $269.50 in service fees for Pierce and Goodhue.  Defendants argue that service was not necessary because they had agreed to produce the experts for depositions and had coordinated mutually agreeable dates for the depositions.  McCurdy Decl. [394] ¶ 4; Moses Decl. [401] ¶ 2-3.  Plaintiff does not dispute this fact, but asserts that subpoenas were necessary to ensure that the experts would bring their "work papers."  Pl.'s Reply [403] 4. I agree with Plaintiff that serving the expert witnesses was necessary, even if Defendants had collaborated with Plaintiff to produce the experts on a particular day.

2.      Transcripts

Plaintiff seeks fees incurred to obtain the transcripts of depositions, hearings, and the trial.  To be awarded as costs, the transcripts must have been "necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  "In general, the mere fact that items are neither introduced into evidence nor otherwise become part of the official court record is not determinative of whether that item was reasonably or necessarily obtained for use in the case."  Frederick v. City of Portland, 162 F.R.D. 139, 143 (D. Or. 1995).

Plaintiff seeks transcript fees for the depositions of Laurie Pearson, Leslie Nellermoe, Julio Velez, Gary Church, J.W. Ring,[24] Paula Rose, William Goodhue, and Tom Hornbeck. Row Decl. Supp. Bill Costs [376] Ex. A at 1-2.  "A deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition." Frederick, 162 F.R.D. at 143.  The presence of a reference to the deposition in the record is not a prerequisite to a determination that it was necessarily obtained.  Id.  Nonetheless, disallowance for expenses of depositions not used at trial is within the district court's discretion.  Washington State Dept. of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995).

Ring, Nellermoe, Church, and Goodhue were witnesses at the trial.  I find that these transcripts were necessarily obtained for Plaintiff to adequately prepare for trial.  Additionally, portions of Pearson's deposition transcript were used in a dispositive motion and introduced at trial.  I award Plaintiff $4,244.38 for all these transcripts.

Regarding Hornbeck, Plaintiff asserts that the transcript was necessary because he was USF&G's corporate representative and initially appeared on USF&G's witness list, though he did not testify at trial.  Plaintiff obtained Hornbeck's transcript in August 2012, well before February 2013, when USF&G submitted its witness list.  Row Decl. Supp. Bill Costs Ex. 2 at 23; USF&G Witness List [303].  Therefore, Plaintiff may recover Hornbeck's transcript fee only if I agree that transcript fees for corporate representatives are always necessary.  I am not persuaded that this is true.  I decline to award the transcript fees for Hornbeck.

---

[24] Plaintiff erroneously refers to John Pierce's deposition transcript, when the invoice refers to J.W. Ring's deposition.  Row Decl. Supp. Bill Costs ¶ 12, Ex. B at 20.

Concerning the Velez and Rose depositions, both were deposed due to a discovery dispute between Plaintiff and USF&G. Plaintiff used these depositions in a renewed motion to compel discovery of the amount of defense costs that USF&G had paid other entities involved in the Superfund Site. The motion was not granted. Because the transcripts were not used at trial or in a dispositive motion, I find that the Velez and Rose transcripts were not necessarily obtained.

Next, Plaintiff seeks transcript fees for the following hearings: summary judgment on August 24, 2010; scheduling conference on March 29, 2011; motion to compel on January 6, 2012; motion to compel on May 7, 2012; and motion to compel on April 2, 2012. Row Decl. Supp. Bill Costs ¶¶ 4, 6, 7, 16, 17. Plaintiff does not sufficiently explain why the summary judgment or scheduling conference transcripts were necessary. Judge King issued a written opinion after the summary judgment hearing, which negated the need for a transcript. Regarding the scheduling conference, a minute order issued after the conference. Plaintiff argues that the minutes did not fully summarize the scheduling conference. A scheduling conference is not a lengthy proceeding. Plaintiff does not explain why the transcript was necessary, when taking notes would have been sufficient—particularly since two attorneys appeared on Plaintiff's behalf. Mar. 29, 2011 Minutes [174]. I decline to award costs for the summary judgment or scheduling conference transcripts.

As for the transcripts for the motions to compel, Plaintiff states that the transcripts were necessary because the minutes issued after the proceedings did not fully capture the proceedings. Row Decl. Supp. Bill Costs ¶¶ 7, 16, 17. According to Plaintiff, the information omitted from the minutes includes a request by the court that Plaintiff write a letter about Velez's testimony and that Plaintiff obtained permission from the court to take depositions of additional witnesses.

Row Decl. Supp. Mot. Compel [260] ¶¶ 7-9.  Again, Plaintiff does not explain why counsel could not take notes during the hearing, especially since two attorneys appeared on behalf of Plaintiff for all three motion to compel proceedings.  The omitted information was not so complex that a transcript was required.  I decline to award fees for these transcripts.

Finally, Plaintiff seeks transcript fees for the pretrial conference on March 18, 2013 and trial transcripts for March 26-28, 2013.  Row Decl. Supp. Bill Costs ¶¶ 19, 20.  The district court has authority to award costs for trial transcripts.  <u>Association of Flight Attendants, ALF-CIO v. Horizon Air. Indus., Inc.</u>, 976 F.2d 541, 551 (9th Cir. 1992) (affirming district court's award of costs for trial transcript which had been used to prepare post-trial motions); <u>see also</u> <u>Independent Iron Works, Inc. v. United States Steel Corp.</u>, 322 F.2d 656, 677-78 (9th Cir. 1963) (at the discretion of the trial court, copies of pretrial and trial transcripts, as well as copies of depositions, may be taxed as costs if they are "reasonably necessary" for use in the case).

Plaintiff states that the pretrial conference and trial transcripts were necessary to prepare the written closing arguments.  Row Decl. Supp. Bill Costs ¶¶ 19-20.  The pretrial conference concerned evidentiary rulings for the trial.  The rulings were not complicated.  In fact, I had denied all of Defendants' motions in limine and their objections to the witness statements and exhibits.  Mar. 18, 2013 Minutes [342].  Plaintiff does not adequately explain why the pretrial conference transcript was necessary.  The fee for the pretrial conference transcript is denied.  As for the trial transcripts, Plaintiff paid $2,273.80 for "rough" transcripts and $4,394.30 for "final" transcripts.  Parks Decl. [393] ¶ 2.  The rough transcripts were available at the end of each trial day.  Plaintiff argues that the rough trial transcripts were necessary to prepare for the next day of trial.  The trial lasted three days and seven witnesses testified.  I am not persuaded that rough transcripts were necessary at the end of each trial day.  In contrast, the parties prepared written

closing statements that cited extensively to the record and the admitted exhibits.  It was necessary to obtain the final transcripts to cite accurately to the record.  I award Plaintiff $4,394.30 for the final trial transcripts.

       3.    Copies

Costs of making copies are available under 28 U.S.C. § 1920(4).  "Copying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable." Arboireau v. Adidas Salomon AG, No. CV-01-105-ST, 2002 U.S. Dist. LEXIS 20342, at *17-18 (D. Or. June 14, 2002) (citing Fressell v. AT&T Tech., Inc., 103 FRD 111, 115-16 (N.D. Ga. 1984)).  However, recoverable copying costs do not include copies made for the convenience of counsel, such as copies of cases or filed papers. Id. at *18.

Plaintiff requests $1,226.88 in costs for copying three sets of trial exhibits.  Row Decl. Supp. Bill Costs ¶ 18.  The printing cost consists of 4,761 regular copies at $0.08 per copy and 846 color copies at $1 per copy.  Defendant USF&G objects to the $1 per copy charge for the color copies, arguing that $0.50 is a more reasonable price per copy.  In Birkes v. Tillamook County, the court found that $0.50 was a reasonable price per color copy based on a declaration from counsel that color copes ranged $0.35-0.79 in various copy stores.  No. 09-CV-1084-AC, 2013 U.S. Dist. LEXIS 29830, at *15 (D. Or. Mar. 4, 2013).  There is no such evidence before me to support reducing the color copy rate.  Plaintiff is awarded $1,226.88 for the trial exhibit copies.

Plaintiff also requests $276.50 for copies from the Oregon State Archives and $221.15 for copies of exhibits produced at Nellermoe's Rule 30(b)(6) deposition.  Row Decl. Supp. Bill Costs Ex. B at 5, 29.  At the Archives, Plaintiff obtained copies of the legislative history of the

Oregon Environmental Cleanup Assistance Act.  Id. at ¶ 3.  Plaintiff cited to the legislative

history in its dispositive motions.  Id.  Plaintiff states that the legislative history was only

available at the Archives.  Pl.'s Reply [403] 5.  Defendants object because they assert the

copying costs were incurred for the convenience of counsel.  I reject Defendants' objection

because unlike case law, the legislative history could not be obtained through computer research.

Defendants do not object to the copies of exhibits obtained at Nellermoe's deposition.  These

exhibits were used at trial and therefore were necessary.  Row Decl. Supp. Bill Costs ¶ 21.

Plaintiff is awarded $497.65 for these copying costs.

C.     Costs Summary

In summary, Plaintiff is awarded a total of $11,198.96 for the following costs:  (1) $189

in filing fees, (2) $343.75 in service fees, (3) $303 in witness fees, (4) $8,638.68 for transcript

fees, and (5) $1,724.53 for copying costs.

III.     Motion to Amend the Judgment

Plaintiff moves to amend the judgment for two reasons:  (1) to reduce the amount of

damages awarded by $658.33 due to a calculation error and (2) to allow for prejudgment interest

in the amount of $550,037.41.

A.     Reduction in Awarded Defense Costs

Plaintiff was awarded a sum of $1,887,907.82 for defense costs.  Plaintiff argues that the

amount should be reduced by $658.33 to account for a calculation error regarding Nellermoe's

work on the executive committee.  The billing entry in question, $658.33 for executive

committee work, was not considered by Defendants' expert in his recommendation to deduct all

committee work from the requested damage award.  Therefore, the recommended deduction for

all committee work did not include $658.33.

I requested supplemental briefing from the parties to calculate the amount of executive committee work performed. To calculate the executive committee work, I reduced the requested damage award by the total fees for all committee work, but then added back the fees for the executive committee work. Defendants' executive committee work total included the $658.33 billing entry, which I added to the award total. Because Defendants' expert never deducted the $658.33 billing entry, there was no need to add back $658.33 when calculating the damage award. I agree with Plaintiff that a reduction of $658.33 is correct. The judgment shall be amended to $1,887,249.49.

B.    Prejudgment Interest

Plaintiff seeks to amend the judgment to include an award of prejudgment interest of $550,037.41. Defendants argue that Plaintiff is not entitled to prejudgment interest because Plaintiff failed to plead it in its second amended complaint.[25] And even if Plaintiff is entitled to prejudgment interest, Defendants disagree with the methodology that Plaintiff used to calculate the amount.

First, the parties dispute whether Plaintiff was required to plead prejudgment interest. Defendants argue that under Oregon law, "[a] party seeking prejudgment interest 'must specifically plead a foundation for prejudgment interest. To do so, that party must (1) request prejudgment interest in the prayer and (2) plead facts sufficient to state a claim for prejudgment interest.'" Davis v. F.W. Fin. Servs., Inc., No. A149988, 2013 Ore. App. LEXIS 1507, at *31 (Or. Ct. App. Dec. 26, 2013) (quoting Emmert v. No Problem Harry, Inc., 192 P.3d 844, 849 (Or. Ct. App. 2008)).

---

[25] Plaintiff argues that its request for "interest" in the prayer for relief includes a request for prejudgment interest. Second Am. Compl. [53] 14 ("For recovery of interest, costs and attorneys' fees as provided by ORS 742.061[.]"). However, prejudgment interest is allowed under a different statute, ORS § 82.010(1).

Plaintiff counters that Defendant is incorrect to use Oregon's procedural requirement for pleading prejudgment interest. Under the federal rules, Plaintiff argues that it is not required to plead prejudgment interest. A court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). The Ninth Circuit has held that "[t]he right to recover prejudgment interest was not affected by [plaintiff's] failure to demand interest in its federal pleadings." Soderhamn Machine Mfg. Co. v. Martin Bros. Container & Timber Products Corp., 415 F.2d 1058, 1064 (9th Cir. 1969)). In light of Soderhamn, I agree that Plaintiff was not required to plead prejudgment interest in its complaint.

Since I have found that Plaintiff is entitled to prejudgment interest, I now must determine the amount of prejudgment interest that is owed. Prejudgment interest in this case is governed by ORS § 82.010, which provides for simple interest at the rate of nine percent per annum on "[a]ll moneys after they become due[.]" ORS § 82.010(1)(a); Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1107 (9th Cir. 1998) ("[a]s a general rule, in diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law") (internal quotation marks omitted). The Oregon Supreme Court recently explained that the "justification for the general rule…that interest accrues on money only after it 'becomes due'" is because "[o]nce due, the debtor has the use of money to which the debtor is not entitled, while the delay in payment deprives the creditor of that use." Strawn, 297 P.3d at 458.

Under Oregon law, a court may award prejudgment interest only when the exact amount, and the time from which interest should run, is ascertained or easily ascertainable. Farhang v. Kariminaser, 217 P.3d 218, 219 (Or. Ct. App. 2009); see also MLM Prop., LLC v. Country Cas. Ins. Co., No. 06-3048-CL, 2010 U.S. Dist. LEXIS 17224, at *24-25 (D. Or. Feb. 25, 2012) ("'prejudgment interest may be awarded if: (1) the exact pecuniary amount is ascertained or

ascertainable by simple computation, or by reference to generally recognized standards, such as market price, and (2) a time of definite default is ascertainable'") (quoting Soderhamn, 415 F.2d 1058, 1064).

Plaintiff's damages are the defense costs that it incurred to respond to the 104(e) request and for its participation in the PCI Group. Plaintiff calculated the interest from the date that the invoice was paid until August 26, 2013, the date of the judgment. Pl.'s Mem. 6; see also Row Decl. Supp. Mot. Amend [383] Ex. A. Each invoice was adjusted to account for the court's awarded damages, as explained in the Findings of Fact and Conclusions of Law [367]. Defendants disagree that the amount of damages or the date from which interest should run are readily ascertainable. First, Defendants argue that the damages were not readily ascertainable because expert analysis was needed to determine the final amount of damages and that the damages could not be ascertained until the court issued the Findings of Fact and Conclusions of Law on August 5, 2013. In the alternative, if the damages were ascertainable from the vendor invoices, prejudgment interest should be calculated from October 25, 2010[26]—that date that Plaintiff provided the invoices to Defendant Liberty Mutual.[27] As another alternative, Defendant USF&G argues that only the non-attorney fees were readily ascertainable because those vendor costs were not reduced by the court's Findings of Fact and Conclusions of Law.

I am not persuaded that the damages were not ascertainable simply because there was a dispute among experts as to the amount owed, and that the final determination by the court differed from the disputed amounts. "[T]he fact that the amount owed cannot be ascertained without resolving complex issues of fact does not bar a determination that the defendant owed

---

[26] Plaintiff disputes that October 25, 2010 is the date that Defendant first were aware of the amount of damages. Plaintiff asserts that in November 2008, it provided Defendants with a current update of defense costs. Second Row Decl. Mot. Amend [431] Ex. B.
[27] USF&G makes this same argument, but does not mention the date that it received all the invoices.

sums certain at a date certain." Jones v. Dorsey, 91 P.3d 762, 765 (Or. Ct. App. 2004). Similar arguments were raised in Strader v. Grange Mutual Insurance Company, 39 P.3d 903 (Or. Ct. App. 2002). The defendant argued that "the amount owed was neither ascertained nor easily ascertainable because, first, plaintiffs submitted different amounts at different times before and during trial and, second, the amount plaintiffs ultimately pleaded differed from the amount defendant offered and both these amounts differed from the jury's determination." Strader, 39 P.3d at 908. The Strader court rejected these arguments and upheld the trial court's prejudgment interest award. Id. at 909. "Put another way, 'although there are questions of fact about the amounts owed, that does not mean that defendant did not owe sums certain at dates certain.'" Id. (quoting Hazelwood Water Dist. v. First Union Management, 715 P.2d 498, 501 (1986)).

I am also not persuaded that the prejudgment interest should run from the date that Plaintiff provided invoices to Defendants. In this case, the damages from the failure to defend began to accrue from the date of tender. I determined that date was January 29, 2008, when Plaintiff gave notice to Defendants about the 104(e) request. Findings of Fact and Conclusions of Law [367], 16. From that date forward, Defendants knew of their potential duty to defend and that the damages, e.g., the defense costs, were ongoing and would accumulate until Defendants stepped in to defend. Defendants attempt to modify the inquiry to when Defendants *knew* of the amount of damages, when the relevant inquiry is when the damages were *ascertainable*. Although Defendants did not know the current status of the damages until October 25, 2010, that does not mean the damages were first ascertainable on that date. In this particular situation, the damages were ascertainable as they accrued over time. I agree with Plaintiff's methodology, that the damages were ascertainable on the day Plaintiff paid the defense cost. If Defendants had assumed the defense of the 104(e) request, they would have received the invoices as they were

due.  Plaintiff was deprived of the use of the money that it paid for defense costs in the absence

of Defendants' assumption of the duty to defend.  The award of prejudgment interest is necessary

to make Plaintiff whole.  I have reviewed Plaintiff's calculation of prejudgment interest in

Exhibit A of the Row Declaration in support of Plaintiff's motion to amend [383].  Plaintiff is

awarded $550,037.41 in prejudgment interest.

Plaintiff additionally requests prejudgment interest of $465.37 per day from August 26,

2013, the date of judgment, until the entry of the amended judgment.  Plaintiff does not explain

why it is entitled to prejudgment interest after judgment had already entered on August 26, 2013.

Plaintiff moved to amend the judgment so that it could request prejudgment interest.  Defendants

did not cause the delay in obtaining an enforceable judgment.  I decline to extend the award of

prejudgment interest until the date of the amended judgment.  Plaintiff is entitled to post-

judgment interest as of August 26, 2013, the date of the initial judgment.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for attorney fees [377] and bill of costs [374]

are granted in part and denied in part.  Plaintiff is awarded attorney fees in the amount of

$1,029,511.76 and costs in the amount of $11,198.96.  Plaintiff's motion to amend the judgment

[381] is granted as follows:  the judgment is amended to award Plaintiff $1,887,249.49 and

prejudgment interest in the amount of $550.037.41.

IT IS SO ORDERED.

Dated this _____ day of March, 2014.


_____
MARCO A. HERNANDEZ
United States District Judge

38 - OPINION & ORDER